**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| TATONKA EDUCATION SERVICES, INC. PBC, <br><br> Plaintiff, <br><br> v. <br><br> YOUNGSTOWN PREPARATORY ACADEMY, <br><br> Defendant. | Case No. _____ <br><br><br> JUDGE _____ <br> Magistrate Judge _____ <br><br> Jury Demand Endorsed Hereon |

**COMPLAINT BY TATONKA EDUCATION SERVICES, INC. PBC
AGAINST YOUNGSTOWN PREPARATORY ACADEMY**

For its Complaint against Youngstown Preparatory Academy ("YPA"), Tatonka Education Services Inc. PBC ("Tatonka" or "TES") alleges the following:

**NATURE OF THE ACTION**

1. YPA is liable for breach of contract and breach of the implied covenant of good faith and fair dealing for terminating a valid contract without cause in violation of the express contractual provisions requiring notice, mediation and an opportunity to cure. As a direct result of YPA's wrongful breach and failure to act in good faith, Tatonka has suffered damages of at least $155,000.

**PARTIES**

2. Tatonka is a public benefit corporation incorporated under the laws of Colorado with its principal place of business in Lone Tree, Colorado and is authorized to do business in Ohio. Tatonka services school systems throughout the country and has had, over the years, contractual relationships with nearly three hundred schools in thirty-seven states including Ohio.

1

Each school partner has unique needs and Tatonka distinguishes itself from traditional charter management companies by offering a full suite of services that can be tailored to each institution's goals. Tatonka offers all of its school partners a simple flat monthly fee pricing model designed to increase the institution's revenue.

3. YPA is a non-profit corporation incorporated under the laws of Ohio and specifically authorized under Ohio Rev. Code Chapter 3314, with its principal place of business in Youngstown, Ohio. YPA is an Ohio community school involved in educating K-8 grade students throughout Youngstown, Ohio and surrounding areas.

## JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 because the parties are of diverse citizenship and the amount in controversy exceeds $75,000.

5. This Court has personal jurisdiction over YPA because its principal place of business is in Youngstown, Ohio.

6. Venue is proper in this Court because YPA is headquartered in this judicial district and because a substantial part of the events and omissions giving rise to the claims occurred in this judicial district.

7. Tatonka is authorized to bring this action against YPA pursuant to Ohio Rev. Code § 3314.01(B).

## FACTUAL ALLEGATIONS

### A. Tatonka and its School Partners

8. Tatonka is a public benefit corporation that was formed in July of 2015 to help stabilize the financial operations of three charter schools on the brink of closure.[1]

9. In only three years, Tatonka used its expertise in financial management, strategic support and coaching to turn the programs into financial successes.

10. Because of its expertise and repeated success with community schools, Tatonka has serviced a nationwide network of customers containing approximately three-hundred school partners operating in thirty-seven different states including Ohio.

11. Tatonka actively maintains business relationships with its school partners throughout the country, thirteen of which are located in Ohio, and is in constant discussions with school partners regarding their needs for charter management services.

12. Tatonka offers a full suite of customizable charter management services in Ohio and throughout the United States ranging from financial management and vendor negotiations to strategic support and human resourcing.

13. Tatonka commonly contracts with school partners to provide fiscal officer services. Tatonka maintains a licensed treasurer on its staff and through its treasurer acts as bonded fiscal officer for the school.

### B. YPA Enters Into A Contract With Tatonka

14. YPA is a community school authorized pursuant to Ohio Rev. Code Chapter 3314 that educates K-8 grade students in Youngstown, Ohio and surrounding areas.

---

[1] A charter school is an academically innovative and flexible alternative to traditional public schools that offers the benefits of smaller class sizes, individualized attention, and adaptable curriculums. In Ohio, charter schools are referred to as community schools. Both terms are used interchangeably for the purposes of this Complaint.

3

15. YPA is operated and managed by a board of directors or Governing Authority who is responsible for school operations, including compliance with Ohio law and Ohio Department of Education regulations (the "Board").

16. Upon information and belief, YPA began its search for charter management services near the beginning of 2022.

17. In or about May of 2022, Tatonka was approached by YPA representatives seeking a contract for fiscal officer and payroll implementation services.

18. YPA represented to Tatonka that it intended to enter a long-term contract and that it was willing to carry out the contract terms in good faith and to completion.

19. On May 17, 2022, Tatonka and YPA entered into a binding, written agreement – the Fiscal Officer Services Agreement (the "Contract") – for the administration of fiscal officer and payroll implementation services. A copy of the Contract is attached as Exhibit A.

### C. The Contract Terms

20. Under the Contract, Tatonka agreed to provide fiscal officer and payroll implementation services to YPA in exchange for monthly payments made over thirty-eight months (the "Charter Management Program"). (*See* Contract.) Specifically, YPA agreed to pay Tatonka a one-time fee of $1,500 for payroll implementation and $2,500 each month for fiscal officer services. (*Id.* at § 9(a).)

21. Tatonka started providing payroll implementation and fiscal officer services to YPA on May 17, 2022 (the "Program Commencement Date"). (Contract § 6(a).) The Contract expressly states that the Charter Management Program will remain in effect for thirty-eight months from the Program Commencement Date or until June 30, 2025 (the "Expiration Date"), and it

automatically renews for perpetual one-year terms unless written notice of an intent to terminate is given ninety days before the Expiration Date. (*Id.*)

22. Exhibit A to the Contract describes the specific suite of services that Tatonka has provided to YPA during the Charter Management Program, which include, but are not limited to, financial policy development, financial data processing, fiscal protocol implementation and other administrative tasks. (Contract, Ex. A.) Tatonka upheld its obligations under the Contract in good faith and performed all required services under the Contract in accordance with industry standards.

23. Recognizing the value of Tatonka's expertise, YPA amended the Contract on September 15, 2022, to add human resource services to the suite of resources provided by Tatonka (the "Human Resources Amendment"). A copy of the Human Resources Amendment is attached as Exhibit B.

24. Under the Human Resources Amendment, Tatonka agreed to provide human resource services to YPA in exchange for monthly payments made over a period thirty-three months. (*See* Ex. B.) Specifically, The Human Resources Amendment requires YPA to pay Tatonka $2,500 each month for thirty-three months. (*See id.*)

25. Exhibit A to the Human Resources Amendment describes the specific array of services that Tatonka has provided to YPA in furtherance of the agreement, which include, but are not limited to, employee recruiting, human resources administration, benefit distribution and other administrative tasks. (*See id.*) Again, Tatonka upheld its obligations under the Contract in good faith and performed all required services under the Contract in accordance with industry standards.

26. In early December, representatives of Tatonka visited YPA at YPA's request. The purpose of the requested visit was for YPA to discuss with Tatonka its providing of additional services due to lack of staffing by YPA. No issue was raised regarding Tatonka's services at that

time, except to discuss YPA potentially contracting for even more services from Tatonka, thus indicating its satisfaction with Tatonka.

### D.  YPA Breaches The Contract

27.     Less than a year into the agreement, without notice or complaint to Tatonka, and less than 30 days since the meeting in early December to discuss Tatonka providing further services, YPA held a "special" i.e. not regularly scheduled, Board meeting on December 20, 2022. YPA did not provide notice or otherwise inform Tatonka of the meeting, as it had for prior meetings.  Until that point, it had been the practice of a Tatonka representative to attend meetings, as scheduling allowed.

28.     Upon information and belief, Tatonka states that at the meeting the Board took action to terminate the Contract with YPA, intentionally ignoring the notice and cure provision of the Contract.

29.     Section 10 of the Contract expressly states that the agreement may only be terminated "upon a breach of a material term or condition of this Agreement **which breach is not cured within thirty (30) business days from written notice from the non-breaching party**." (Contract § 10.) (emphasis added)

30.     Section 4 of the Contract states that the Customer or YPA must "**take those steps necessary to ensure that it complies with the Contract**, and any laws, ordinances, rules and regulations applicable to the Customer or its responsibilities with regard to the Customer as set forth in this Agreement." (*Id.* at §4) (emphasis added).

31.     Section 4 of the Contract identifies the steps that should have been taken by YPA to ensure compliance with the Contract.  It states that if YPA is in breach of the Contract the company must promptly inform Tatonka about the breach and immediately take steps to cure it in a timely manner:

> **If the Customer is notified by the state, or by any other governmental authority or by any other person or entity that the Customer may be in violation of the Contract or any applicable laws, ordinances, rules and regulations, the Customer shall immediately notify TES of the alleged violation and shall take steps to cure in a timely fashion such violation(s).**

(*Id.* at § 4) (emphasis added).

32. Section 4 of the Contract goes on to state expressly that YPA must "**timely notify TES of any anticipated or known**: (i) material health or safety issues, or (ii) **problems of any other type that could adversely affect TES in its performance of the Services hereunder**."

(*Id.* at § 4) (emphasis added).

33. Finally, Section 12(i) of the Contract states that before termination each party is required to make every good faith effort to resolve any and all disputes under the Contract amicably, which includes turning to mediation:

> **The Parties agree that each will make every good faith effort to resolve any and all disputes under this Agreement amicably before taking any legal action in court, including submitting to non-binding mediation.** If a dispute is not settled between TES and the Customer, non-binding mediation shall take place by a mediator provider by the Ohio State Bar Association and be acceptable to both Parties. Each party shall pay for its own attorney fees.

(*Id.* at § 12(i)) (emphasis added).

34. Sections 4 and 10 of the Contract expressly require YPA to make a good faith effort to provide written notice and a thirty-day grace period before termination, and Section 12(i) of the Contract states that it cannot be terminated by either party without first attempting mediation. (*Id.* at § 4, 10, 12(i))

35. Despite the plain and unambiguous language of the Contract, Defendants terminated the Contract without notice on or about December 20, 2022, in violation of the Contract's express provisions requiring notice, mediation and a thirty-day opportunity to cure.

Importantly, Tatonka did not learn about YPA's decision to terminate the Contract until December 30, 2022, ten days after the decision was already made.

36. Having undertaken to carry out its obligations in good faith under the Contract, Tatonka took necessary steps to comply with the Contract by notifying YPA of the breach shortly after learning of its occurrence and by inquiring of YPA of its intent to mediate the damages caused by YPA's breach.

37. Furthermore, YPA continued to interact with Tatonka staff as late as January 9, 2023 in regard to recruiting services, adding to the confusion of the extent of their breach of contract through termination without cause.

38. YPA has refused Tatonka's efforts to resolve this matter amicably and has since contracted with another charter management company for fiscal officer and payroll implementation services, thus revealing its intent to abandon the Contract without any effort to cure or mediate in compliance with the terms of the Contract.

39. Having entered into a contract with another company for fiscal officer and payroll services, any attempt to now cure or mediate under the terms of the Contract has been abandoned and made futile.

40. As a result, Tatonka has filed this action against YPA for wrongfully terminating the Contract in violation of the express contractual provisions requiring notice, mediation and an opportunity to cure.

41. Section 12(e) of the Contract entitles Tatonka to attorneys' fees and costs for this action. The provision states that:

> **The Customer [YPA] shall indemnify**, defend and hold harmless Contractor and his heirs and successors from and **against any and all claims,** demands, causes of action, losses, damages, costs and expenses (including reasonable attorneys' fees) **that might arise or be imposed due to the Customer's breach of its obligations**

8

**under this Agreement** or that is a result of the Customer's gross negligence, willful conduct, or any of its prior actions or inactions.

(*Id.* at § 12(e)) (emphasis added).

## CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION
### Breach of Contract Against YPA

42. Tatonka incorporates the foregoing allegations as though fully set forth herein.

43. Tatonka and YPA entered into an express and written Contract.

44. Tatonka fully performed under the Contract all requirements of the Contract in accordance with industry standards and without any breach, material or otherwise, by it.

45. YPA has unilaterally and without any reason or cause terminated and abandoned a fully enforceable contract.

46. YPA intentionally breached the Contract by ignoring the express provisions of Section 10, which provide that a party may not terminate the Contract without first giving written notice and a thirty day grace period to cure.

47. YPA also intentionally breached the Contract by ignoring the express provisions of Sections 4 and 12(i), which provide that a party must make every good faith effort to resolve disputes under the Contract amicably, including mediation.

48. YPA intentionally breached the Contract because it terminated the Contract without notice and refuses to revoke termination despite Tatonka's good faith efforts to resolve the matter amicably.

49. As a direct and proximate result of YPA's breaches, Tatonka has suffered damages greater than $75,000, including its costs and attorneys' fees.

50. Tatonka is entitled to attorneys' fees and costs pursuant to Section 12(e) of the Contract.

## SECOND CAUSE OF ACTION
### Breach of Implied Covenant of Good Faith and Fair Dealing Against YPA

51. Tatonka incorporates the foregoing allegations as though fully set forth herein.

52. Tatonka and YPA entered into a Contract.

53. Tatonka fully performed under the Contract all requirements of the Contract in accordance with industry standards and without any breach, material or otherwise, by it, including complying with the implied covenant of good faith and fair dealing.

54. YPA breached the implied covenant of good faith and fair dealing when it failed to make a good faith effort to mediate or cure any purported breaches that it might ascribe to Tatonka.

55. As a direct and proximate result of YPA's failure to undertake good faith and fair dealing, Tatonka has suffered damages greater than $75,000, including its costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE,** Tatonka prays for the following relief:

1. That Tatonka be awarded all damages to the full extent as permitted by law and in an amount to be proven at trial;

2. That Tatonka be awarded $155,000 in compensatory damages and any other damages allowed by law;

3. That Tatonka be awarded costs and attorneys' fees as permitted by law;

4. That Tatonka be awarded indemnification under Section 12(e) of the Contract;

5. That Tatonka be awarded interest on losses sustained from the date of the loss;

6. That a trial by jury be had on all issues triable; and

7. That the Court award such other and further relief as it deems necessary and proper.

*/s/ Elizabeth T. Smith*
Elizabeth T. Smith (OH Bar No. 0077819)
VORYS, SATER, SEYMOUR and PEASE LLP
52 East Gay Street, P.O. Box 1008
Columbus, Ohio 43216-1008
Phone: (614) 719-4976
Fax:     (614) 719-4976
Email:  etsmith@vorys.com

Natalia Steele (OH Bar No. 0082530)
Matthew R. Carpenter (OH Bar No. 0098800)
VORYS, SATER, SEYMOUR and PEASE LLP
200 Public Square #1400
Cleveland, OH 44114
Phone: (216) 479-6187
Fax:     (216) 937-3755
Email:  nsteele@vorys.com
            mrcarpenter@vorys.com

*Counsel for Plaintiff Tatonka Education Services, Inc. PBC*

11